UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-383-GWU

ELIZABETH ANN BAILEY,                                                  PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.

## INTRODUCTION

Elizabeth Bailey brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

    impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

08-383 Elizabeth Ann Bailey

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

08-383  Elizabeth Ann Bailey

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Bailey, a 49-year-old former corrections officer with a high school education, suffered from impairments related to disorders of the back, gastroesophageal reflux disease, a history of asthma, an affective disorder and anxiety. (Tr. 9, 11). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 13, 16). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 17). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 16).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert William Ellis included an exertional limitation to light level work restricted from a full range by such non-exertional limitations as (1) an inability to ever climb; (2) an inability to

more than occasionally stoop, crouch or crawl; (3) a "limited but satisfactory" ability to handle stress, and deal with supervisors, co-workers or the public; and (4) a limitation to simple, one-, two-step instructions. (Tr. 38-39). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 39). Therefore, assuming that the vocational factors considered by Ellis fairly characterized Bailey's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Raymond Santucci examined Bailey and diagnosed exogenous obesity, chronic low back pain with possible L5-S1 herniation and tobacco abuse. (Tr. 290). Dr. Santucci opined that, despite her impairments, the plaintiff would still be able to perform a "moderate" amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. (Id.). The ALJ's findings are essentially consistent with these somewhat vague limitations. Dr. Jorge Baez-Garcia reviewed the record and opined that the claimant could perform the full range of medium level work. (Tr. 314-321). Treatment records from Lake Cumberland Medical Associates indicate that the only restriction on Bailey's activities was a need to quit smoking. (Tr. 190-199). Treatment records from the Spine and Brain Neurological Center also do not reveal the existence of more severe physical restrictions than those found by the

ALJ. Therefore, substantial evidence supports this portion of the administrative decision.

The ALJ also dealt properly with the evidence of record relating to Bailey's mental impairment. The plaintiff sought treatment for her mental problems at the Adanta Group. The claimant was diagnosed as suffering from a mood disorder. (Tr. 189). Specific mental limitations were not assessed. Bailey's Global Assessment of Functioning (GAF) was rated at 55. (Id.). Such a GAF suggests the existence of "moderate" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34, and would be consistent with the ALJ's findings.

The staff at Lake Cumberland noted problems with anxiety and depression during the course of treating Bailey's physical problems. (Tr. 195, 197). However, the plaintiff was not referred for treatment by a mental health professional and specific mental limitations were not assessed. (Tr. 190-199). The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Therefore, this opinion does not indicate the existence of more severe mental limitations than those found by the ALJ.

The staff at the Spine and Brain Neurological Center had Bailey undergo a Pain Profile analysis. (Tr. 260-272). The plaintiff was administered a number of

psychological tests. The claimant's scores on the depression, anxiety and somatization scales did not reveal any serious problems. (Tr. 270). Thus, this source also does not indicate the existence of a disabling mental impairment.

Psychologists Ed Ross (Tr. 273) and Ann Demaree (Tr. 300) each reviewed the record and opined that it did not reveal the existence of a "severe" mental impairment. These opinions provide additional support for the administrative decision.

Psychologist Edward Lovelace examined Bailey and diagnosed a major depressive disorder and a panic disorder without agoraphobia. (Tr. 334). The plaintiff's GAF was rated at 50, suggesting the existence of "serious" psychological symptoms. (Id.). The ALJ rejected this GAF rating, noting that it was inconsistent with the claimant's activities and social functioning. (Tr. 15). The undersigned notes that this rating was for her "current" level of functioning rather than for the past year. Thus, the GAF rating would not necessarily be indicative of her overall level of functioning. The rating is also offset by that of the Adanta staff. The only specific functional restriction indicated by Lovelace was that Bailey's ability to handle psychological stressors would be negatively affected by her mental problems. (Tr. 334). This limitation is arguably compatible with limitation regarding stress contained in the hypothetical question. Therefore, the court finds that the ALJ dealt properly with this opinion.

08-383  Elizabeth Ann Bailey

Bailey argues that the ALJ erred in failing to find that her mental problems met the requirements of § 12.04 concerning affective disorders.  This section requires a claimant to show:

> A.  Medically documented persistence, either continuous or intermittent, of one of the following:
> 1. Depressive syndrome characterized by at least four of the following:
> a. Anhedonia or pervasive loss of interest in almost all activities; or
> b. Appetite disturbance with change in weight; or
> c. Sleep disturbance; or
> d. Psychomotor agitation or retardation; or
> e. Decreased energy; or
> f.  Feelings of guilt or worthlessness; or
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or
> i.  Hallucinations, delusions, or paranoid thinking; or
> 2. Manic syndrome characterized by at least three of the following:
> a. Hyperactivity; or
> b. Pressure of speech; or
> c. Flight of ideas; or
> d. Inflated self-esteem; or
> e. Decreased need for sleep; or
> f.  Easy distractibility; or
> g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
> h. Hallucinations, delusions, or paranoid thinking; or
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
> AND
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;
> OR

08-383  Elizabeth Ann Bailey

> C. Medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of one or more years' inability to function outside a highly supported living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04 (2009).  Bailey asserts that the ALJ found that Part A was met by information contained in the report of Lovelace and that the only issue concerns whether Part B was satisfied.  The defendant argues that the ALJ found that Part B was not met and did not reach whether Part A was met.  The court notes that no treating, examining or reviewing source of record specifically indicated that the Listing requirements had been satisfied.  The plaintiff argues that the loss of her job at JC Penney in 2003 would satisfy the requirement of repeated decompensation in a job setting.  However, this was only one incident well before her alleged onset date of November 23, 2005.  (Tr. 78).  The claimant has not cited any evidence to support her claim that she has "marked" restriction in one of the other three required areas.  Therefore, the court must reject Bailey's argument that the Listing section was met.

08-383  Elizabeth Ann Bailey

The court notes that Bailey submitted additional medical records directly to the Appeals Council which were never seen by the ALJ.  This action raises an issue concerning a remand for the taking of new evidence before the Commissioner. Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g).  The statute provides that a claimant must prove that the additional evidence is both material and that good cause existed for its not having been submitted at an earlier proceeding. Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988).  In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.  Sizemore, 865 F.2d at 711.  Thus, the new evidence must be "material" and "good cause" must be shown why it was not previously submitted.

The medical record with which Bailey seeks a remand of consists of a report by Dr. Zev Zusman dated June 30, 2008.  This report was compiled after the ALJ's final decision was issued June 27, 2008.  The plaintiff has offered no explanation as to why this evidence was not obtained prior to the issuance of the ALJ 's

08-383 Elizabeth Ann Bailey

decision. While the record was not in existence at the time of this decision, such, by itself, does not satisfy the "good cause" test and a valid reason for failure to obtain the evidence must still be shown. <u>Oliver v. Secretary of Health and Human Services</u>, 804 F.2d 964, 966 (6th Cir. 1986). Therefore, the claimant has failed to meet the "good cause" requirement and, so, a remand for the taking of new evidence is not appropriate.

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of September, 2009.

Signed By:
<u>G. Wix Unthank</u>
**United States Senior Judge**